No. 25-7070

# In the United States Court of Appeals for the Ninth Circuit

BLANCHE PHLAUM; JASON JONES,
individually, and on behalf of all others similarly situated,
*Plaintiffs-Appellants*,

v.

NAVY FEDERAL CREDIT UNION,
*Defendant-Appellee*,

and

DOES, 1-100 INCLUSIVE,
*Defendants*.

On Appeal from the United States District Court
for the Central District of California
Case No. 5:24-cv-00765-JGB-DTB (The Hon. Jesus G. Bernal)

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

TARAS KICK
KATHERINE LEHE
THE KICK LAW FIRM, APC
815 Moraga Drive
Los Angeles, CA 90049
(310) 395-2988
*taras@kicklawfirm.com*

MATTHEW W.H. WESSLER
ROBERT D. FRIEDMAN
STEFANIE OSTROWSKI
GUPTA WESSLER LLP
1400 16th Street, NW, Suite 225
Washington, D.C. 20036
(202) 888-1741
*matt@guptawessler.com*

August 10, 2026

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

Table of authorities ..........................................................................................ii

Introduction.........................................................................................................1

Argument............................................................................................................ 2

    I.      Navy Federal's contract does not unambiguously permit it to charge multiple insufficient-funds fees for a single payment that a consumer authorizes. .......................................................................... 2

            A.    Navy Federal's interpretation conflicts with the contract's ordinary and natural reading. ..................................................3

            B.    At a minimum, reading the contract to permit Navy Federal to charge only a single insufficient-funds fee is a plausible interpretation...........................................................12

    II.    There are no alternative grounds for affirmance.................................18

            A.    The *Lambert* settlement does not preclude Mr. Jones's claims..............................................................................18

                 1.    Mr. Jones's claims do not fall within the scope of the *Lambert* release. ........................................19

                 2.    To the extent the *Lambert* settlement purports to release Mr. Jones's claims, it is unenforceable. ..............20

            B.    The notice-of-claim provision in Navy Federal's new contract does not apply to this suit. ........................................ 24

                 1.    Navy Federal's contract does not contain a notice-of-claim provision.......................................... 25

                 2.    Mr. Jones complied with any such provision. ................ 26

Conclusion....................................................................................................... 28

# TABLE OF AUTHORITIES

## Cases

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997) ................................................................. 23

*Atencio v. TuneCore, Inc.,*
2016 WL 11518598 (C.D. Cal. 2016) ........................................ 26

*Baptiste v. GTE Federal Credit Union,*
2020 WL 13600942 (Fla. Cir. Ct. 2020) ..................................... 5

*Charter Communications Entertainment I, DST v. Burdulius,*
460 F.3d 168 (1st Cir. 2006) ..................................................... 21

*Chen v. Allstate Ins. Co.,*
819 F.3d 1136 (9th Cir. 2016) ................................................... 27

*Coleman v. Alaska USA Federal Credit Union,*
2020 WL 1866261 (D. Ala. 2020) ............................................... 6

*Doswell Ltd. Partnership v. Virginia Electric & Power Co.,*
468 S.E.2d 84 (Va. 1996) .......................................................... 13

*Eichman v. Fotomat Corp.,*
759 F.2d 1434 (9th Cir. 1985) ............................................. 21, 22

*Eure v. Norfolk Shipbuilding & Drydock Corp.,*
561 S.E.2d 663 (Va. 2002) ...................................................... 3, 12

*Farley v. Lincoln Benefit Life Co.,*
150 F.4th 1197 (9th Cir. 2025) ................................................. 23

*Feller v. Transamerica Life Insurance Co.,*
2016 WL 6602561 (C.D. Cal. 2016) ..................................... 20, 21

*Foster v. Wilson,*
123 S.E. 527 (Va. 1924) ........................................................... 13

*Gardner v. Flagstar Bank, FSB,*
2025 WL 1721191 (6th Cir. 2025) ..................................... 7, 16, 17

*Germain v. Shearin,*
653 F. App'x 231 (4th Cir. 2016)................................................................27

*Government Employees Insurance Co. v. Moore,*
580 S.E.2d 823 (Va. 2003) .......................................................................5

*Hesse v. Sprint Corp.,*
598 F.3d 581 (9th Cir. 2010) ...........................................................20, 23

*Hicks v. PGA Tour, Inc.,*
897 F.3d 1109 (9th Cir. 2018) ............................................................ 3, 12

*In re American Express Financial Advisors,*
672 F.3d 113 (2d Cir. 2011)................................................................... 21

*In re Hyundai & Kia Fuel Economy Litigation,*
926 F.3d 539 (9th Cir. 2019)................................................................. 24

*Jarrett v. Panasonic Corp. of North America,*
8 F. Supp. 3d 1074 (E.D. Ark. 2013)................................................... 26

*Kearney v. Standard Insurance Co.,*
175 F.3d 1084 (9th Cir. 1999) ............................................................. 17

*King v. Navy Federal Credit Union,*
713 F. Supp. 3d 729 (C.D. Cal. 2024) ................................................ 26

*Lucas v. Metropolitan Tower Life Insurance Co.,*
2013 WL 12097639 (M.D. Fla. 2013) ................................................22

*Mawyer v. Atlantic Union Bank,*
2022 WL 1049311 (E.D. Va. 2022)....................................................... 17

*McAdams v. Robinson,*
26 F.4th 149 (4th Cir. 2022)................................................................22

*McIntosh v. Gailius,*
2025 WL 901691 (7th Cir. 2025)..........................................................27

*Melito v. Experian Martketing Solutions, Inc.,*
923 F.3d 85 (2d Cir. 2019) ..................................................................22

*Metric Constructors, Inc. v. NASA,*
    169 F.3d 747 (Fed. Cir. 1999) .............................................................. 12

*Moore v. Chesapeake & Ohio Railway Co.,*
    167 S.E. 351 (Va. 1933) ........................................................................ 14

*Moore v. Yehling,*
    2026 WL 1724735 (9th Cir. 2026) ..................................................... 27

*National Super Spuds, Inc. v. New York Mercantile Exchange,*
    660 F.2d 9 (2d Cir. 1981) ............................................................. 23, 24

*New Castle County v. National Union Fire Insurance Co.,*
    174 F.3d 338 (3d Cir. 1999) ................................................................ 17

*Oliver v. Davis,*
    25 F.4th 1228 (9th Cir. 2022) ............................................................. 28

*Ortiz v. Fibreboard Corp.,*
    527 U.S. 815 (1999) ............................................................................. 23

*Ott v. L&J Holdings, LLC,*
    654 S.E.2d 902 (Va. 2008) .................................................................. 12

*Page v. Alliant Credit Union,*
    52 F.4th 340 (7th Cir. 2022) ............................................................... 16

*Perks v. TD Bank, N.A.,*
    444 F. Supp. 3d 635 (S.D.N.Y. 2020) ........................................... 7, 16

*Petrey v. Visions Federal Credit Union,*
    2021 WL 2364971 (N.D.N.Y. 2021) ................................................... 16

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ............................................................................. 24

*Pitts v. Terrible Herbst, Inc.,*
    653 F.3d 1081 (9th Cir. 2011) ............................................................. 27

*Ross v. Metropolitan Life Insurance Co.,*
    411 F. Supp. 2d 571 (W.D. Pa. 2006) ............................................... 22

*Schertzer v. Bank of America, N.A.,*
   109 F.4th 1200 (9th Cir. 2024) ............................................................................14

*Schuiling v. Harris,*
   747 S.E.2d 833 (Va. 2013) ..................................................................................11

*Security Watch, Inc. v. Sentinel Systems, Inc.,*
   176 F.3d 369 (6th Cir. 1999) ............................................................................. 25

*Shein v. Canon USA, Inc.,*
   2009 WL 3109721 (C.D. Cal. 2009) ...................................................................27

*Storey v. Cello Holdings, LLC,*
   347 F.3d 370 (2d Cir. 2003) ............................................................................... 21

*TechnoMarine SA v. Giftports, Inc.,*
   758 F.3d 493 (2d Cir. 2014) ...............................................................................22

*Twigg v. Sears, Roebuck & Co.,*
   153 F.3d 1222 (11th Cir. 1998).......................................................................... 24

*Vue v. Pentagon Federal Credit Union,*
   2023 WL 6387174 (E.D. Cal. 2023)....................................................................16

*Walker v. Gateway Milling Co.,*
   92 S.E. 826 (Va. 1917)........................................................................................13

*Westmoreland-LG&E Partners v. Virginia Electric & Power Co.,*
   486 S.E.2d 289 (Va. 1997) .................................................................................13

*Williams v. Boeing Co.,*
   517 F.3d 1120 (9th Cir. 2008) ........................................................................... 20

*Williams v. GE Capital Auto Lease, Inc.,*
   159 F.3d 266 (7th Cir. 1998).........................................................................21, 22

*Xiong v. Jeunesse Global, LLC,*
   2019 WL 8011740 (C.D. Cal. 2019) ...................................................................22

*Yearby v. American National Insurance Co.,*
   2021 WL 3855833 (N.D. Cal. 2021)...................................................................21

**Statutes**

15 U.S.C. § 1693a ...................................................................................15

15 U.S.C. § 1693c ...................................................................................15

15 U.S.C. § 1693e .....................................................................................5

Va. Code § 8.4-104 ...................................................................................4

**Regulations**

12 C.F.R. § 1005.10 ..................................................................................8

12 C.F.R. § 707.3 ....................................................................................15

**Other authorities**

CFPB,
   *Supervisory Highlights Junk Fees Update Special Edition* (Oct. 2023) ...........................14

Check
   *Black's Law Dictionary* (12th ed. 2024)....................................................................10

Debit,
   *Black's Law Dictionary* (12th ed. 2024)................................................................. 3, 4

Debit,
   *The Merriam-Webster.com Dictionary* .................................................................. 3, 4

Item,
   *Black's Law Dictionary* (12th ed. 2024)....................................................................4

NACHA,
   *ACH Operations Bulletin #1-2014: Questionable ACH Debit Origination: Roles
   and Responsibilities of ODFIs and RDFIs* (Sept. 30, 2014) .........................................9

OCC Bulletin 2023-12,
   *Overdraft Protection Programs: Risk Management Practices* (Apr. 26, 2023)...................14

**Treatises**

Newberg & Rubenstein on Class Actions § 18.19 (6th ed. 2026) ...............................20

Restatement of the Law,
    Consumer Contracts § 4 (2024) .................................................................14, 15

# INTRODUCTION

Navy Federal told its customers that it would charge them only "a" fee for "each" "refused check" or "returned debit item." Any reasonable consumer would read that to mean one fee per check, no matter how many times it bounced. And they would interpret the contract's identical language about "debit items" the same way: one fee per authorized payment.

Navy Federal steadfastly resists that straightforward interpretation. Instead, it tries to muddy the waters with convoluted arguments about other contract provisions and the mechanics of the ACH debit system—even though both foreclose its position. And it never once even attempts to define "debit item," simply insisting that the term "necessarily" refers to a "merchant's request for payment." That is not a reasonable reading of the contract.

But even if it were, Mr. Jones's interpretation is reasonable too. It tracks the dictionary definitions of the key terms. It matches how other financial institutions use those terms in their own contracts. And it aligns with consumer expectations. At minimum, then, the contract is ambiguous.

Navy Federal concedes as much. It admits that "item"—one of the fee provision's key terms—is "agnostic" as to whether it means a payment from a consumer or a request from a merchant. That concession should resolve this appeal.

Falling back, Navy Federal asks this Court to affirm on two alternative grounds. First, it argues that a settlement agreement in a prior class action bars this suit. Second, it asserts that Mr. Jones failed to plausibly allege that he notified Navy Federal of his claims prior to initiating this lawsuit. Neither argument has merit. The *Lambert* settlement did not—and could not—release Mr. Jones's claims. And the notice-of-claim provision that Navy Federal accuses Mr. Jones of violating does not apply here.

If Navy Federal really intended its contract to permit it to assess duplicative insufficient-funds fees, it needed to say so—as other financial institutions, and Navy Federal itself in its most recent contract, have had no trouble doing. Because the language it used is at a minimum ambiguous, Mr. Jones's claims may not be resolved on a motion to dismiss. This Court should reverse the district court's dismissal.

## ARGUMENT

**I.     Navy Federal's contract does not unambiguously permit it to charge multiple insufficient-funds fees for a single payment that a consumer authorizes.**

Navy Federal's contract permits it to charge "a" fee for "each" "refused check" or "returned debit item." ER-36–37, 69. That language unambiguously permits Navy Federal to charge only a single insufficient-funds fee for each payment that a customer authorizes. Navy Federal resists this reading by offering an interpretation that conflicts with any reasonable definition of "check" or "debit

2

item," does not correspond with how those terms are used throughout the contract or by others in the banking industry, and contradicts reasonable consumer expectations.

Even if Navy Federal's interpretation were plausible, however, reversal would still be warranted. At best, Navy Federal's contract can be "understood in more than one way," making it "ambiguous." *Eure v. Norfolk Shipbuilding & Drydock Corp.*, 561 S.E.2d 663, 668 (Va. 2002). And when a contract is ambiguous, its interpretation "presents a question of fact inappropriate for resolution on a motion to dismiss." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1118 (9th Cir. 2018).

### A. Navy Federal's interpretation conflicts with the contract's ordinary and natural reading.

**1.** Navy Federal pays lip service to Virginia contract law, observing (at 19), as it must, that terms in a contract must be interpreted according to their "plain meaning." Yet it never once even attempts to define the most relevant term: "debit item." Instead, Navy Federal simply asserts (at 21) that the term—at least "as used" in its contract—"necessarily refers to the merchant's request for payment."

The definitions of "debit" and "item" demonstrate otherwise. A "debit" is an "instruction that one gives to a bank to pay money directly from one's account." Debit, *Black's Law Dictionary* (12th ed. 2024); *see also* Debit, *The Merriam-Webster.com Dictionary*, https://perma.cc/XXA2-ZBY5 ("a charge against a bank deposit account"). And an "item" is a "negotiable instrument or a promise or order to pay

3

money." Item, *Black's Law Dictionary* (12th ed. 2024); *see also* Va. Code § 8.4-104(9). Taken together, "debit item" can mean only one thing: A form of payment, akin to a check or other negotiable instrument, through which a customer of a financial institution authorizes a withdrawal from his account. *See* Opening Br. 21–22, 26.

Navy Federal offers no competing definition of its own. Instead, it quibbles with Black's Law Dictionary, insisting (at 23) that its definition is inapplicable because it recognizes that this type of debit can also be called a "direct debit." *See* Debit, *Black's Law Dictionary*. But as our opening brief explained (at 22 n.4), that dictionary's other definitions of "debit" reflect the use of that term in an accounting sense—as a "sum charged as due or owing" or a "record … in financial accounting [that] shows money to have been spent or to be owed." Debit, *Black's Law Dictionary*. Navy Federal does not argue that those accounting-specific definitions apply here. So that leaves the dictionary's remaining definition: "[a]n instruction that one gives to a bank to pay money directly from one's account." *Id.* In any event, Navy Federal has no objection to Merriam Webster's definition: "a charge against a bank deposit account." Debit, *The Merriam-Webster.com Dictionary*.

Failing to meaningfully contest our definitions, Navy Federal next argues that they do not support our interpretation. Black's Law Dictionary does not help Mr. Jones, Navy Federal says (at 22–23), because "in an ACH debit transaction, the account holder gives no such 'instruction' to his bank." That's not true; absent an

instruction from an accountholder, a merchant's request for payment would be fraudulent. *See* 15 U.S.C. § 1693e(a) (requiring that ACH requests be "authorized by the consumer"). Navy Federal's argument that it should prevail under Merriam Webster's definition fails for a similar reason. According to Navy Federal (at 23), every "request for payment … initiated *by a merchant*" qualifies as "a charge against a bank deposit account." If that were true, a third party's unauthorized or fraudulent request to withdraw money from a customer's account—disconnected from any accountholder authorization—would constitute a "debit item" for which Navy Federal could charge its customers a fee. The contract cannot be read to require that "absurd result." *Gov't Emps. Ins. Co. v. Moore*, 580 S.E.2d 823, 829 (Va. 2003).

**2.** Although Navy Federal refuses to define "debit item," it offers definitions of *other* terms used throughout its contract. But none of these terms dictate when Navy Federal may charge an insufficient-funds fee.

First, Navy Federal accuses us (at 19–20) of "ignor[ing]" what it says is the fee provision's "operative verb": "returned." But the fee provision never uses the *verb* "returned." It uses that word as an adjective, modifying "debit item." *See* ER-69 (permitting Navy Federal to charge a single fee "for each returned debit item"); *Baptiste v. GTE Fed. Credit Union*, 2020 WL 13600942, at *3 (Fla. Cir. Ct. 2020) (rejecting the credit union's interpretation because, "[i]n the phrase 'each returned debit item,' the word 'returned' is an adjective"). So a re-presented request for payment cannot

5

itself be a "*returned* debit item" unless it first is a "debit item." *See Coleman v. Alaska USA Fed. Credit Union*, 2020 WL 1866261, at *5 (D. Ala. 2020) (rejecting argument that contract permitting a fee for "each returned item" unambiguously permitted multiple insufficient-fund fees). In other words, Navy Federal's contract permits it to charge a fee per debit item *only if* that debit item was returned.

Ultimately, Navy Federal's asks this Court (at 15) to rewrite its contract to permit it to charge a fee "each time it has to return a debit item to a merchant." Navy Federal could have drafted its contract along those lines. Other financial institutions have. *See, e.g.*, ER-40–41 ("[A] $32 fee will be imposed on you *each time* an item and transaction resubmitted for payment *is returned*." (emphasis added)). And so did Navy Federal—in January 2021—when it revised its contract to permit it to charge a fee "[e]ach time [it] return[s] a debit for insufficient funds." ER-38–39. This Court should not rewrite Navy Federal's contract to implement a revision the credit union didn't make until months after the fees at issue here were assessed.

Navy Federal next sets its sights on another verb: "present." An "account holder never presents their *own* ACH debit request for payment to the bank," Navy Federal points out (at 21). That's true—and irrelevant. Unlike other banks, Navy Federal did not draft its contract to permit it to charge a fee per presentment. *See, e.g.*, ER-42 (contract permitting fees "each time an item is presented for payment"); ER-40–42 (contracts permitting fees "per presentment"). Navy Federal's fee

provision never even uses the word "present." Instead, it charges a fee per debit item—not per presentment of that item.

A different provision in Navy Federal's contract *does* discuss an item's presentment. That provision explains the order in which Navy Federal "posts items presented on" a customer's account. ER-69. Navy Federal argues (at 22) that this provision demonstrates that a merchant's presentation of an ACH debit is an "item." But if the *presentation* of an ACH debit is an "item," then the phrase "item presented" would refer to a presentation that is itself presented. That is a nonsensical reading. *See Gardner v. Flagstar Bank, FSB*, 2025 WL 1721191, at *6 (6th Cir. 2025) ("[I]f each presentment itself forms an 'item,' this language becomes arguably redundant."). Far from supporting Navy Federal, this provision makes plain that an "item" is the thing that is presented—not the act of presentment itself. *See Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 640 (S.D.N.Y. 2020) (concluding that similar language is "ambiguous with regard to whether a resubmission of an ACH transaction is a separate item").

What's more, the provision's list of "items"—including checks, debit card transactions, and ACH debits—share a common characteristic: They are instruments through which an accountholder authorizes payments from his account. So when the contract permits Navy Federal to assess a fee per "debit item," it too is referring to an instrument through which an accountholder authorizes payments from his account—not a third party's request for payment. *See* Opening Br. 22–23.

7

Other contract provisions emphasize that a debit item is a transaction authorized by a consumer. *See* Opening Br. 25. The contract provides that "[a]n ACH debit might be made as a result of an authorization you gave a third party to automatically transfer funds from your account to pay your monthly insurance premium." ER-72. Navy Federal repeatedly argues (at 2, 7, 24) that this clause demonstrates that an "ACH debit" includes the third party's request for payment based on that authorization. That is wrong. By explaining that an ACH debit is made as a result of an "authorization *you gave* a third party," this provision emphasizes that ACH debits are payments authorized by accountholders—not unilateral actions taken by merchants.

Navy Federal is therefore attacking a strawman when it argues (at 25–26) that our interpretation would permit it to charge only a single insufficient-funds fee for automatic monthly ACH payments. When a consumer authorizes a merchant to make automatic monthly payments via ACH, they have authorized multiple ACH debits. *See* 12 C.F.R. § 1005.10(d) (explaining that a person may authorize multiple "transfers" via a single authorization). Each payment made pursuant to that authorization is a separate "debit item": It is an instruction, authorized by a consumer, to pay money directly from his account. And so for each month's payment, Navy Federal may assess a single insufficient-funds fee.

8

**3.** Navy Federal next turns to the NACHA rules, which it says (at 32) demonstrate that a "resubmitted Entry" and the "original Entry" are distinct "item[s]." But the rules take great pains to ensure that re-initiated payments are *not* treated as transactions distinct from the original request. NACHA requires re-initiated entries to "contain the identical data as the original Entry." NACHA, *ACH Operations Bulletin #1-2014: Questionable ACH Debit Origination: Roles and Responsibilities of ODFIs and RDFIs* 6 (Sept. 30, 2014), https://perma.cc/3Z3Q-FV3U; *see also* ER-25 § 8.37(c) (providing that an "Entry shall be deemed an 'item' within the meaning … of the Uniform Commercial Code"). And to ensure that a bank does not wrongly take a re-initiated payment to be a new transaction, the rules require that a re-initiated entry be labeled "RETRY PYMT." ER-25 § 2.13.4.2. NACHA's rules also prohibit a merchant from altering a re-presented entry to make it look like a consumer has authorized a new payment. *See ACH Operations Bulletin #1-2014* at 6–7. The rules thus make clear that a re-presented entry is just another attempt to collect on the original entry—not a separate "item" that can trigger an additional fee. Far from supporting Navy Federal's interpretation, then, the NACHA rules reinforce the distinction that the contract itself draws, between a customer's payment by ACH (a "debit item") and a merchant's later attempt to collect those funds (the presentations of that debit item). And for each such debit item, Navy Federal's contract permits it to charge only a single insufficient-funds fee.

9

**4.** Navy Federal's interpretation would also lead to the absurd result that bounced checks and returned debit items are treated differently.

Like the fee provision governing debit items, the fee provision governing checks permits Navy Federal to charge a single fee "for each refused check." ER-69. Navy Federal does not dispute that a check is an "order in writing … requiring the bank … to pay on demand a sum certain in money to a designated person." Check, *Black's Law Dictionary* (12th ed. 2024). So Navy Federal may charge only a single fee per written check, however many times it is (re)submitted. *See* Opening Br. 23–24.

Navy Federal only half-heartedly resists this common-sense interpretation. It points out (at 28) that a bank's obligations do not go away when a check is resubmitted. But the fact that a bank must follow the law each time a check is submitted does not mean a check magically becomes a new check whenever it is re-presented to a bank. Imagine a customer pays a merchant by check—signing, say, check number 123 for $25. According to Navy Federal, if the check is declined for insufficient funds and the merchant re-presents it to the bank, the check has somehow transformed into a new check. It hasn't. It's still check number 123.

Left with no way to argue that a re-presented check is a new check, Navy Federal resorts to misrepresenting its contract, stating (at 28) that the contract permits it to charge a fee upon "the refusal of a check." That's not what the contract says. Accurately quoted, the contract permits fees only for "each *refused* check." ER-69

(emphasis added). Once again, if Navy Federal wanted to draft a provision authorizing it to assess fees each time a check is refused, it knew how. It did so in its January 2021 contract. *See* ER-38 ("Each time we refuse a check for insufficient funds, we will assess a nonsufficient funds … fee").

Falling back, Navy Federal argues (at 27) that it doesn't matter if it is permitted to assess only one insufficient-funds fee per check, because the fee provision governing checks and that governing debit items need not be interpreted "in precisely the same way." But no reasonable consumer would expect that a provision authorizing a fee "for each refused check" permits only a single fee per payment, whereas a provision authorizing a fee "for each returned debit item" permits multiple. Virginia law instructs courts to read contracts "as a whole" in a way that "harmonize[s]" the "various provisions" to avoid such incongruous results. *Schuiling v. Harris*, 747 S.E.2d 833, 836 (Va. 2013).[1]

---

[1] Navy Federal suggests (at 27) that this Court need not decide whether its contract permits duplicate insufficient-funds fees each time a check is re-presented. But the provision governing checks sheds light on how a reasonable consumer would understand the provision governing debit items. And Mr. Jones alleged that he was assessed an insufficient-funds fee whenever "the same item" was re-submitted and seeks to represent a class of accountholders who were charged duplicate insufficient-funds fees based on the resubmission of "an item"—encompassing both checks and ACH debits. ER-43–44.

**B.    At a minimum, reading the contract to permit Navy Federal to charge only a single insufficient-funds fee is a plausible interpretation.**

Navy Federal has not put forth any definition of "debit item"—let alone a plausible one. But even if it had, reversal would still be warranted. At the very least, our interpretation is plausible too, rendering the contract "ambiguous." *Eure*, 561 S.E.2d at 668. And the interpretation of an ambiguous contract "presents a question of fact inappropriate for resolution on a motion to dismiss." *Hicks*, 897 F.3d at 118.

**1.** Navy Federal's argument that the contract unambiguously permits it to charge multiple insufficient-funds fees per authorized payment is untenable given that other financial institutions use the word "item" in precisely the way that we've shown it's used: as referring to an accountholder's authorized payment, not a merchant's later presentment of that payment. *See* Opening Br. 28–29 & n.5. An interpretation that accords with the common industry usage of a term cannot be considered unreasonable. *See Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 752 (Fed. Cir. 1999) (industry usage of a term sheds light on the "reasonableness" of parties' "interpretations"). Indeed, Navy Federal itself admits (at 30) that the definition of "item" is "agnostic" as to whether it refers to an order by an accountholder or a merchant. That concession dooms its argument. If the key contract term "refer[s] to two or more things at the same time," the contract is ambiguous. *Ott v. L&J Holdings, LLC*, 654 S.E.2d 902, 905 (Va. 2008).

With no response to the overwhelming evidence of trade usage, Navy Federal asks this Court (at 29–30) to ignore it. But in Virginia, evidence that contractual terms "have acquired … by usage of the trade, a peculiar meaning … is admissible even though the phrases or terms themselves are unambiguous." *Doswell Ltd. P'ship v. Va. Elec. & Power Co.*, 468 S.E.2d 84, 90 (Va. 1996).[2] Navy Federal responds (at 30) that trade usage nonetheless "has no bearing" here because this contract is between a financial institution and a consumer—not two industry participants. But "[i]t is a cardinal rule of construction that in construing a written instrument, technical words will be taken in their technical sense … unless there appear in the writing a manifest intention of using them in a different sense." *Foster v. Wilson*, 123 S.E. 527, 528 (Va. 1924). It is thus "well settled" that, "when parties enter into a contract with reference to a particular … trade, they are presumed to have contracted with reference to the usages of that business or trade." *Walker v. Gateway Milling Co.*, 92 S.E. 826, 828 (Va. 1917). Contracts should therefore be "interpreted consistently with such usage" unless the trade usage is "inconsistent with the contract" by its "express terms." *Id.*

It's true that a company may not appeal to trade usage to contravene a consumer's reasonable expectations about the meaning of a contract where the consumer had no reason to know that technical meaning. *See Schertzer v. Bank of Am.,*

---

[2] *Westmoreland-LG&E Partners v. Va. Elec. & Power Co.*, 486 S.E.2d 289 (Va. 1997), did not hold otherwise. *Contra* Answering Br. 29. In that case, the Virginia Supreme Court expressly "confirm[ed] what [it] said in *Doswell*." *Id.* at 293.

*N.A.*, 109 F.4th 1200, 1208–09 (9th Cir. 2024) (rejecting bank's proposed "technical definition" of a term that did not "align[]" with its "ordinary and popular meaning"); Restatement of the Law, Consumer Contracts § 4 (2024) (terms in consumer contracts should be interpreted "consistent with the reasonable expectations of the consumer"). But where, as here, the trade usage conforms with a reasonable consumer's understanding of the contract, it would be perverse to permit a company to use a term with a technical meaning and then argue against a consumer's reliance on that meaning. Navy Federal "cannot use technical terms with a fixed meaning" only to "disclaim such meaning" when inconvenient to its litigating position. *Moore v. Chesapeake & Ohio Ry. Co.*, 167 S.E. 351, 357 (Va. 1933).

Navy Federal insists (at 36) that it would not contravene a reasonable consumer's expectations to charge them a fee each time a merchant submits a request for payment because accountholders "maintain control over whether and how they authorize merchants to seek payment from their accounts." But it never explains how a consumer is supposed to prevent a merchant from re-presenting a payment for which they possess insufficient funds. *See* CFPB, *Supervisory Highlights Junk Fees Update Special Edition* 5–6 (Oct. 2023), https://perma.cc/2HLS-7P27 (recognizing that duplicate insufficient-funds fees are "not reasonably avoidable by consumers"); OCC Bulletin 2023-12, *Overdraft Protection Programs: Risk Management Practices* (Apr. 26, 2023), https://perma.cc/AHQ3-YUNX ("Consumers typically have no control over

14

when a returned ACH transaction or check will be presented again."). And no reasonable consumer would interpret a contract that permits just "a" single fee per "check" or "debit item" to permit *multiple* fees for reasons completely outside their control. *See* Opening Br. 30–31.[3]

That's particularly true here, where duplicative fees would serve no apparent purpose. *See* Restatement of Consumer Contracts § 4 (instructing courts to consider the "typical purpose of such transactions" when discerning the "reasonable expectations of consumers"). As Navy Federal explains (at 6), the purpose of insufficient-funds fees is to "deter" consumers from making payments for which they have insufficient funds. That purpose is not advanced by charging *additional* fees for actions taken by merchants over which a consumer has no control. According to Navy Federal (at 36), consumers should expect duplicative fees because the "true victim" of a transaction for which a customer has insufficient funds is the merchant. But Navy Federal's insufficient-funds fees do not go to merchants. They go to Navy Federal.

---

[3] Navy Federal suggests (at 37–38 n.1) that it is somehow exempt from federal regulations requiring credit unions to disclose the fees they assess in a "readily understandable" manner. *See* Opening Br. 32–33; 15 U.S.C. § 1693c(a). It's not. *See* 15 U.S.C. § 1693a(9) (covering "credit union[s]"); 12 C.F.R. § 707.3(a) (same). These regulations reinforce that a reasonable consumer would not expect to incur multiple fees for a single transaction based on a contract that permits Navy Federal to charge them only "a" fee for "each" "check" or "debit item."

**2.** At best, then, Navy Federal's contract is ambiguous. Navy Federal cannot dispute that the weight of authority holds that fee provisions similar to its own are ambiguous. *See* Opening Br. 36–39. Instead, it leans on a single case—*Page v. Alliant Credit Union*, 52 F.4th 340 (7th Cir. 2022)—in which the Seventh Circuit held that a different credit union's contract unambiguously permitted it to charge multiple insufficient-funds fees per transaction. But the contract at issue in that case permitted the credit union to charge a fee for each "Non-sufficient Fund Item"—not each debit item. *Id.* at 344. And "an 'Item' does not become a 'Nonsufficient Fund Item' until it is 'presented' against insufficient available funds." Brief of Appellee, *Page v. Alliant Credit Union*, 2022 WL 135907, at *55 (7th Cir. 2022). So unlike Navy Federal's contract, the contract at issue in *Page* permitted the credit union to assess a fee per presentment.

Navy Federal's contract is more similar to the contract in *Gardner*, 2025 WL 1721191 (6th Cir. 2025), which the Sixth Circuit held did *not* unambiguously permit duplicative insufficient-funds fees. Other courts—the vast majority, in fact—have reached the same conclusion. *See* Opening Br. 36–39.[4] Navy Federal insists (at 38)

---

[4] Navy Federal points out (at 33, 39–40 & n.6) that some of these cases—and a brief authored by plaintiff's counsel—attempted to distinguish *Lambert*. But most did so on the ground that the plaintiff in *Lambert* conceded that the term "item" means a "request for payment." *See, e.g.*, *Vue v. Pentagon Fed. Credit Union*, 2023 WL 6387174, at *8 (E.D. Cal. 2023); *Perks*, 444 F. Supp. 3d at 641; *Petrey v. Visions Fed. Credit Union*, 2021 WL 2364971, at *4 (N.D.N.Y. 2021); Plaintiff's Response to Defendant's Motion to Dismiss, *Petrey v. Visions Fed. Credit Union*, 2021 WL 5547962, at *12 (Feb. 1, 2021). Mr. Jones has not made any such concession here. *See Mawyer v. Atl. Union Bank*, 2022 WL

that its contract uses "materially different language" than the contract in *Gardner*. But any differences work in Mr. Jones's favor. The *Gardner* contract explicitly stated that an insufficient-funds fee "may be assessed after 'an Item is presented to'" the bank. *Gardner*, 2025 WL 1721191, at *6. Even with that clarification, the Sixth Circuit concluded that customers could have "fairly interpreted the [contract] to permit just one fee per transaction." *Id.* at *7. Navy Federal's contract, however, permits it to assess a fee only per "returned debit item," without any reference to that item's presentment. ER-69.

In any event, that "different courts have arrived at conflicting interpretations" of similar contract language "is strongly indicative of [the contract's] essential ambiguity." *New Castle Cnty. v. Nat'l Union Fire Ins. Co.*, 174 F.3d 338, 347 (3d Cir. 1999); *accord Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089–90 (9th Cir. 1999) (concluding that a contract was ambiguous where different jurists had arrived at competing "fair readings").

Had Navy Federal wanted to draft a contract that unambiguously permits it to assess multiple insufficient-funds fees, it could have done so. Many other financial institutions have. *See* Opening Br. 28–29. And so did Navy Federal, in its January 2021 contract. *See* Opening Br. 15, 35; ER-38. But in the contract at issue here, it did not.

---

1049311, at *5 (E.D. Va. 2022) (observing that "*Lambert* provides limited guidance" due to that concession).

Because Navy Federal has not demonstrated that its interpretation is the only—or even the most—reasonable construction, the district court was obligated to allow the case to proceed past the pleading stage.[5]

## II. There are no alternative grounds for affirmance.

Sensing weakness on the merits, Navy Federal devotes nearly half of its argument to two alternative grounds for affirmance. Both fail. The *Lambert* settlement did not—and could not—release Mr. Jones's claims. And the notice-of-claim provision that Navy Federal insists Mr. Jones did not comply with does not apply to this lawsuit.

### A. The *Lambert* settlement does not preclude Mr. Jones's claims.

Navy Federal asks this Court to affirm even if its contract unambiguously prohibits the fees it assessed because, it argues (at 42), the *Lambert* settlement released Mr. Jones's claims. It didn't. As the district court recognized, the *Lambert* settlement released only claims that arose during the *Lambert* class period, and Mr. Jones's claims arose after that class period. ER-89. And even if the settlement purported to release

---

[5] Navy Federal confusingly argues (at 40) that any "'failure to disclose' theory lurking in" Mr. Jones's contract claim is preempted. To be clear: Mr. Jones's claim is that Navy Federal breached its contract by assessing insufficient-funds fees its contract did not permit. And even Navy Federal concedes (at 40) that a breach-of-contract claim is not preempted.

claims outside the *Lambert* class period, due process would prevent it from being enforced to bar such claims.

### 1. Mr. Jones's claims do not fall within the scope of the *Lambert* release.

In *Lambert*, a group of Navy Federal customers sued the credit union for assessing duplicative insufficient-funds fees in violation of its contract. *See* Opening Br. 13–15. Navy Federal settled, agreeing to pay $16 million to class members to compensate them for the duplicative insufficient-funds fees they were charged between January 28, 2014, and October 27, 2020. ER-30, 104, 141; *see also* ER-89. In return, class members agreed to release Navy Federal from liability for insufficient-funds fees it assessed during that period. ER-123–24.

Navy Federal argues (at 43) that the release extends to *all* claims that *Lambert* class members may *ever* have against Navy Federal related to its insufficient-funds fees. But the release encompasses only "claims … that were or could have been alleged" in *Lambert*. ER-124. So, as the district court recognized, the settlement did not release claims challenging fees assessed after the end of the *Lambert* class period because such claims "could not have been alleged" in *Lambert*. ER-92. The release also provides that it applies only to claims that are "based upon" or that "relate to" conduct that occurred "during the Class Period." ER-124. This, too, demonstrates that the *Lambert* settlement "did not contemplate the release of claims based on [Navy Federal's] conduct *after* the [*Lambert*] Class Period." ER-89 (emphasis added).

Because Mr. Jones's claims—and the claims of the class he seeks to represent—challenge fees assessed *after* the class period, ER-43–44, they were not released by the *Lambert* settlement. *See Feller v. Transamerica Life Ins. Co.*, 2016 WL 6602561, at *5 (C.D. Cal. 2016) (holding that a similarly drafted settlement release could not "reasonably" be interpreted as releasing claims based on future actions of the defendant). That's why no class member objected to the scope of the release. *See* Objections to Settlement, *Lambert v. Navy Federal*, No. 19-cv-103 (E.D. Va. Feb. 26, 2021) (only objection to *Lambert* settlement not challenging release). No one understood the settlement to release such claims.

### 2. To the extent the *Lambert* settlement purports to release Mr. Jones's claims, it is unenforceable.

**a.** Even if Mr. Jones's claims fell within the scope of the *Lambert* release, they would not be precluded. A class action settlement agreement's "bare assertion that a party will not be liable for a broad swath of potential claims does not necessarily make it so." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). Class action settlements are not ordinary contracts; they are court-approved "judgment[s]." Newberg & Rubenstein on Class Actions § 18.19 (6th ed. 2026). The preclusive effect of a class action settlement thus "parallels the scope of any litigated judgment." *Id.* And like any judgment, a class settlement may preclude only claims that "depend[]" upon the same set of facts." *Williams v. Boeing Co.*, 517 F.3d 1120, 1134 (9th Cir. 2008). A class action settlement thus may not preclude a future suit that "alleges wrongful

conduct occurring after the settlement date." *Eichman v. Fotomat Corp.*, 759 F.2d 1434, 1439 (9th Cir. 1985); *cf. Storey v. Cello Holdings, LLC*, 347 F.3d 370, 383 (2d Cir. 2003) (Sotomayor, J.) ("If the second litigation involved … subsequent transactions, there generally is no claim preclusion.").

Mr. Jones's claims do not depend upon the "same set of facts" as the claims in *Lambert*. They couldn't. At the time of the *Lambert* settlement, the fees Mr. Jones challenges hadn't been assessed yet. So the *Lambert* settlement could not preclude his claims challenging those fees. *See Eichman*, 759 F.2d at 1436, 1439; *see also Charter Commc'ns Ent. I, DST v. Burdulius*, 460 F.3d 168, 179 n.12 (1st Cir. 2006) ("subsequently committed violations" are not barred by a prior lawsuit even if they are "of the same nature as the conduct complained of"); *In re Am. Express Fin. Advisors*, 672 F.3d 113, 138–39 (2d Cir. 2011) ("[T]here can be no question that the [plaintiffs'] claims, to the extent that they involve conduct occurring *after* the Class Period, cannot be Released Claims."); *Yearby v. Am. Nat'l Ins. Co.*, 2021 WL 3855833, at *15 (N.D. Cal. 2021) ("[A] class action settlement's release is unenforceable against claims predicated on the defendant's post-settlement conduct."); *Feller*, 2016 WL 6602561, at *6 (similar).

In arguing otherwise, Navy Federal relies (at 46) on nonbinding cases that permitted class settlements to release future claims challenging wrongful conduct that occurred during the settlement period. In *Williams v. GE Capital Auto Lease, Inc.*, 159 F.3d 266 (7th Cir. 1998), for example, both suits challenged the same wrongful

conduct: The defendants' inclusion of allegedly unlawful terms in its leases. *See id.* at 274. Here, however, Mr. Jones does not allege that Navy Federal's fee provisions are unlawful. He claims only that Navy Federal breached those provisions by charging fees its contract does not permit.[6]

Nor would enforcing this Court's identical-factual-predicate rule "undermine the finality" of class settlements, as Navy Federal protests (at 47). Class settlements can release claims that rest on the same facts that were at issue in the class action. What they cannot do is extend beyond those facts and "in effect immunize" defendants against all suits concerning future misconduct. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 503 (2d Cir. 2014).[7]

---

[6] Other cases that Navy Federal cites (at 47 n.7) are inapposite for the same reason. *See, e.g., Xiong v. Jeunesse Glob., LLC*, 2019 WL 8011740, at *2 (C.D. Cal. 2019) (subsequent suit was "not limited to conduct" post-dating the settled class period); *Lucas v. Metro. Tower Life Ins. Co.*, 2013 WL 12097639, at *12 (M.D. Fla. 2013) (claims were precluded because the challenged conduct "occurred during the class period encompassed by the Settlement"); *Ross v. Metro. Life Ins. Co.*, 411 F. Supp. 2d 571, 578 n.3 (W.D. Pa. 2006) (similar). To the extent other courts have held otherwise, those decisions are inconsistent with this Court's pronouncement in *Eichman* that a settlement does not preclude future claims "insofar as [they allege] wrongful conduct occurring after the settlement date." 759 F.2d at 1439.

*Melito v. Experian Mktg. Sol'ns, Inc.*, 923 F.3d 85 (2d Cir. 2019), does not support Navy Federal's position either. That case was an approval of a class action settlement—not a determination of the preclusive effect of that settlement. *See id.* at 88; *McAdams v. Robinson*, 26 F.4th 149, 161 (4th Cir. 2022) (holding that the scope of class-settlement release "is for a court enforcing the release to decide").

[7] It would have been easy for Navy Federal to avoid the "gap period" liability it accuses (at 47) Mr. Jones of exploiting. All it needed to do was put its revised contract terms into effect immediately following the settlement—or decline to charge

**b.** The preclusive effect of a class action settlement is limited in another way too: Absent class members cannot be bound by a settlement unless their interests were "adequately represented." *Hesse*, 598 F.3d at 589. And absent class members are not adequately represented where some class members hold claims that others lack, yet all class members are represented together in a single, unitary class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997); *Farley v. Lincoln Benefit Life Co.*, 150 F.4th 1197, 1203 (9th Cir. 2025).

Some *Lambert* class members were charged duplicative insufficient-funds fees after the class period; some were not. But the settlement treated them all the same. To the extent the settlement purports to release future claims, then, the subset of class members with such claims were not adequately represented. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 857 (1999) (recognizing that the decision to treat class members with future claims "the same" as those without evidenced inadequate representation); *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 18–19 (2d Cir. 1981) (inadequate representation was "apparent" where "a class member holding" two claims "receives no more than another class member holding only one").

**c.** Finally, if a class-settlement release is to bind absent class members, due process requires that class members first be provided with adequate notice. *See Phillips*

---

its customers duplicative insufficient-funds fees until the new contract went into effect.

*Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 568 (9th Cir. 2019). Where a notice fails to "adequately apprise class members" that failing to opt out will release certain claims, a settlement cannot preclude class members from asserting those claims in the future. *Nat'l Super Spuds*, 660 F.2d at 16; *see also Shutts*, 472 U.S. at 812.

The *Lambert* notice would not have communicated to an average class member that failing to opt out would release claims challenging fees assessed after the class period. The notice repeatedly told class members that failing to opt out would release claims "related to the Settlement," which, the notice explained, encompassed the assessment of insufficient-funds fees "between January 28, 2014, and October 27, 2020." SER 218; *see also* SER 215. Nowhere does the notice say anything about the assessment of insufficient-funds fees *after* October 27, 2020. To the extent the settlement released claims outside of that time range, then, absent class members were not adequately notified. *See, e.g., Nat'l Super Spuds*, 660 F.2d at 13–14, 17; *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1228 (11th Cir. 1998).

## B. The notice-of-claim provision in Navy Federal's new contract does not apply to this suit.

Finally, Navy Federal argues (at 49) that this Court should affirm the district court's dismissal because Mr. Jones failed to plausibly allege that he complied with a notice-of-claim provision in its contract. There's just one problem: Navy Federal's

contract does not contain a notice-of-claim provision. And even if it did, Mr. Jones complied with it.

### 1. Navy Federal's contract does not contain a notice-of-claim provision.

Mr. Jones alleges that Navy Federal breached the Consumer Account Agreement that was in place in October 2020. ER-30, 35, 39, 43. That agreement does not require customers to notify Navy Federal before filing a lawsuit. ER-66–73. Navy Federal does not contend otherwise. Instead, it relies on a notice provision in a later contract that Navy Federal admits (at 8) wasn't put into effect until January 2021 (at the earliest). That provision, however, applies only to suits "alleg[ing] that" Navy Federal "breached any provision of … *this Agreement*." SER-381 (emphasis added); *see also id.* (explaining that the notice provision applies only to a judicial action that "arises from" Navy Federal's actions "pursuant to *this Agreement*" (emphasis added)).

Customers alleging violations of the January 2021 Agreement must therefore comply with that agreement's notice-of-claim provision. But Mr. Jones did not allege that Navy Federal breached the January 2021 Agreement. He alleged only violations of the original agreement, before the January 2021 Agreement went into effect. ER-39, 43–44. So the notice provision in the January 2021 Agreement does not apply to his claims. *See Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 372 (6th Cir. 1999) (arbitration provision governing claims "arising out of or relating to … this

Agreement" did not apply to dispute arising out of prior agreement); *Atencio v. TuneCore, Inc.*, 2016 WL 11518598, at *2 (C.D. Cal. 2016) (similar).

### 2. Mr. Jones complied with any such provision.

Even if the January 2021 Agreement's notice-of-claim provision applies retroactively, dismissal would not be appropriate. Mr. Jones plausibly alleged compliance with any such provision.

Mr. Jones alleged that, years before the initiation of this lawsuit, he complained to Navy Federal over the phone about its assessment of duplicative insufficient-funds fees and requested refunds. ER-50. According to Navy Federal (at 51), these calls do not count because Mr. Jones "fail[ed] to specify precisely *when*" they took place. But courts hold allegations of notice via phone call sufficient, even where a consumer fails to allege the precise date of the call. *See, e.g., King v. Navy Fed. Credit Union*, 713 F. Supp. 3d 729, 735–36 (C.D. Cal. 2024); *Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1083 (E.D. Ark. 2013) (allegations that "members of the Class … called or otherwise complained" satisfied pre-suit notice requirement).

Mr. Jones also alleged that, in April 2024—more than five months before he filed the operative complaint—he mailed Navy Federal a notice-of-claim letter, again contesting its assessment of duplicative insufficient-funds fees and requesting refunds. ER-50; SER 322–23. Those allegations, too, satisfy any notice requirement.

26

*See Shein v. Canon USA, Inc.*, 2009 WL 3109721, at \*6 (C.D. Cal. 2009) (holding that notice letter filed two months before amended complaint was sufficient notice).

Ultimately, Navy Federal's notice arguments reveal the goal of its notice provision: to enable it to avoid class liability by paying off named plaintiffs one by one. Navy Federal insists (at 58) that its notice provision "does not prohibit class actions"—it simply gives it "the opportunity to resolve disputes." But Navy Federal's actions in this litigation demonstrate its true intent. *See* ER-48–50 (describing Navy Federal's attempts to avoid class liability). Permitting defendants to "pick off" named plaintiffs would "undercut the viability of the class action procedure." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011); *see also Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1143 (9th Cir. 2016) (defendants should not be able to "pick[] off lead plaintiffs to avoid a class action").

Finally, if this Court were to affirm on the ground that Mr. Jones failed to comply with the notice provision, it would need to modify the district court's judgment to be without prejudice to Mr. Jones's initiation of another lawsuit after complying with the notice provision. *See Germain v. Shearin*, 653 F. App'x 231, 234–35 (4th Cir. 2016); *McIntosh v. Gailius*, 2025 WL 901691, at \*1 (7th Cir. 2025); *see also, e.g., Moore v. Yehling*, 2026 WL 1724735, at \*1 (9th Cir. 2026). This Court should not affirm on an alternative ground that the district court did not consider and that would not even preclude Mr. Jones from re-initiating this lawsuit. *See Oliver v. Davis*, 25 F.4th

27

1228, 1237 (9th Cir. 2022) (declining to consider alternative grounds that the district court did not consider).

## CONCLUSION

This Court should reverse the decision below.

Respectfully submitted,

*/s/ Matthew W.H. Wessler*
MATTHEW W.H. WESSLER
ROBERT D. FRIEDMAN
STEFANIE OSTROWSKI
GUPTA WESSLER LLP
1400 16th Street, NW, Suite 225
Washington, D.C. 20036
(202) 888-1741
*matt@guptawessler.com*

TARAS KICK
KATHERINE LEHE
THE KICK LAW FIRM, APC
815 Moraga Drive
Los Angeles, CA 90049
(310) 395-2988
*taras@kicklawfirm.com*

August 10, 2026

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Circuit Rule 32-1(b) because this brief contains 6,976 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32-1(c). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.


August 10, 2026

/s/ Matthew W.H. Wessler
MATTHEW W.H. WESSLER

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate Electronic Filing system. All participants are registered for electronic filing and will be served by the Appellate Electronic Filing system.

August 10, 2026

/s/ Matthew W.H. Wessler
MATTHEW W.H. WESSLER

*Counsel for Plaintiffs-Appellants*